**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **No. 24 CR 135** |
| | ) | |
| **SOLOMON MARSHALL** | ) | **Judge John Robert Blakey** |
| | ) | |
| **Defendant.** | ) | |

## SOLOMON MARSHALL'S SENTENCING MEMORANDUM

SOLOMON MARSHALL, by and through his attorney, Joshua B. Kutnick, respectfully asks this Honorable Court to impose a sentence of **27 Months** to be followed by three years of supervised release. That sentence is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

A sentence of 27 Months is warranted by Marshall's relatively young age, his substantially untreated mental illness, his history of prolonged childhood sexual abuse, domestic violence, homelessness, and the demonstrably non-violent character of the offense conduct. Marshall entered a bank, passed a written note to a teller, received $776 in small bills, and left the bank without further incident. He displayed no weapon. He made no verbal threat. He applied no physical force. The note itself stated: "No one gets hurt." The funds were immediately recovered at the time of his arrest. No person was harmed. A sentence of 27 Months accomplishes every statutory purpose of sentencing without imposing a term greater than necessary for a 24-year-old zero point offender whose life has been defined by untreated mental illness and unaddressed trauma.

## I. THE GUIDELINE CALCULATION

Defendant disagrees with the Guidelines Calculation by the Probation Office and contained in the Government's Version of the Offense. Defendant argues that the correct Guidelines Calculation is as follows:

Base Offense Level – 20 (USSG §2B3.1(a))

Specific Offense Characteristics – +2 (USSG §2B3.1(b)(1))

**Adjusted Offense Level: 22**

Acceptance of Responsibility – -2 (USSG §3E1.1)

Zero Point Offender – -2 (USSG §4C1.1)

**Total Offense Level: 18**

Marshall receives no criminal history points, therefore, his Criminal History Category is I. With a Total Offense Level of 18 and Criminal History Category I, the advisory guideline range is **27-33 months.**

## A. Acceptance of Responsibility

The Probation Office declined to recommend a two-level reduction for acceptance of responsibility because Marshall exercised his constitutional right to trial. PSR ¶ 22. Marshall should receive an adjustment for acceptance of responsibility pursuant to USSG §3E1.1.

Application Note 2 to USSG §3E1.1 provides that:

> [I]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

Marshall's case is one of these rare situations.

Marshall did not go to trial to contest his identity, his presence at the Fifth Third Bank branch, or his actions. At trial, Marshall did not deny any of the conduct that was alleged, i.e. entering the bank, passing a note to a bank teller, and demanding and receiving money. His trial argument was a strictly legal one: that his conduct did not constitute robbery "by intimidation" within the meaning of 18 U.S.C. § 2113(a). This strictly legal argument was advanced again in Marshall's Post-Trial Motion. His defense was a challenge to the application of the statute to the undisputed facts. It falls squarely within the plain language of Application Note 2. Marshall does not deny the facts that led to his conviction. He accepts responsibility for the actions that he took.

## B. Zero-Point Offender Reduction Under § 4C1.1

Marshall has zero criminal history points. Under USSG §4C1.1, a defendant with zero criminal history points receives a two-level reduction if he meets all of the criteria listed at §4C1.1(a)(1) through (11). Marshall clearly satisfies subparagraphs 1-4 and 6-11. The only question warranting analysis is subsection (a)(5), which disqualifies a defendant who "used violence or credible threats of violence in connection with the offense."

Marshall used neither. He passed a note. He displayed no weapon. He made no verbal threat of any kind to the teller. He made no inference to having weapons and did not feign having one. While the statement from the note itself, "no one gets hurt," may be sufficient for intimidation under 18 U.S.C. §2113(a), it is clearly not a threat of violence. In fact, it is a promise that there will be no violence whatsoever.

## II. SOLOMON MARSHALL'S HISTORY AND CHARACTERISTICS

## A. Childhood Defined by Violence, Instability, and Loss

Solomon Marshall was born in Chicago on July 18, 2001. He is 24 years old. He grew up on the west side of Chicago in a home that was dominated by his father's physical and emotional abuse. PSR ¶ 47. As the youngest child, he reportedly bore the brunt of his father's violence. *Id.* His mother used alcohol throughout his childhood as a coping mechanism for his father's abuse. *Id.* He witnessed at least one severe violent altercation between his parents shortly before they separated, an event his mother confirmed continues to affect him. *Id.*

After the divorce, the family moved frequently and changed schools repeatedly. PSR ¶ 48. Financial stability ended with the marriage; after the separation, the family experienced food insecurity and lived with friends of his mother's. *Id.* Several years later, his father was diagnosed with Stage 4 cancer, and his mother assumed caregiving duties for the man who had abused the entire family. *Id.* Marshall's mother and the defendant himself both describe that period as traumatic. *Id.*

The three to four years immediately preceding the offense were, by his mother's account, the most traumatic of Marshall's life. PSR ¶ 49. His mother explained that "it was just me and Solomon facing the trauma together" during that period, as his two siblings were away at college. *Id.* The family lost their home and was forced to relocate to an unfamiliar neighborhood. *Id.* His maternal grandmother was simultaneously diagnosed with Alzheimer's Disease, and his mother assumed her care as well. *Id.* It was during this period that Marshall began exhibiting more pronounced mental health symptoms and turned to substances to manage them. PSR ¶¶ 49, 62.

**B. Prolonged Childhood Sexual Abuse**

Marshall disclosed that he was sexually abused by a close family member beginning at approximately age two and continuing for approximately ten years. PSR ¶ 68. His parents were

reportedly aware and took no action. *Id.* He did not recognize the conduct as abuse until he was in the second or third grade, when he learned about sexual abuse at school. *Id.* He has never meaningfully processed the experience with anyone and has received no trauma counseling. *Id.* The one occasion when his mother raised the subject, when Marshall was approximately eleven years old, he was left him feeling that she centered the abuse more around herself rather than him. *Id.* This history, a decade of sexual abuse beginning in early childhood, ignored by the adults responsible for his protection, and never addressed in any therapeutic setting is among the most significant mitigating facts in this case.

## C. Severe and Substantially Untreated Mental Illness

Marshall has struggled with mental health issues since childhood. PSR ¶ 61. He was diagnosed with ADHD and depression in elementary school. PSR ¶ 62. His mother observed symptoms during his junior year of high school but, in hindsight, believes signs were present much earlier. PSR ¶ 61. By 2020 or 2021, Marshall had received diagnoses of anxiety, PTSD, psychosis, and borderline bipolar disorder. PSR ¶ 62. He was hospitalized twice following severe panic attacks that led him to seek emergency treatment and was transferred to inpatient psychiatric care on each occasion, where he was treated for depression and suicidal ideation. PSR ¶ 63. He did not maintain consistent outpatient treatment following his discharge. *Id.*

Marshall reports a history of auditory and visual hallucinations, which records from the Jerome Combs Detention Center corroborate. He reported hearing "shadow people and whispers" on multiple occasions while detained there. PSR ¶ 65. During the presentence investigation interview, he reported ongoing delusions and voices, describing the experience as "surreal but real" and acknowledging that they affected how he interacted with others and with reality. *Id.*

Records from the Jerome Combs Detention Center confirm a diagnosis of depressive episodes and treatment with multiple psychiatric medications, including duloxetine, mirtazapine, Wellbutrin XL, and Zyprexa. PSR ¶ 67. Upon transfer to the MCC, his psychiatric medications were discontinued. PSR ¶ 70. He has since requested mental health services at the MCC and has not received a response. *Id.* He is currently receiving no treatment for any of his documented psychiatric conditions. Marshall was recently transferred to the Winnebago County Jail. It is unknown, at the time of this filing, whether he is currently receiving any mental health treatment.

## D. Victimization in Government Custody

On March 3, 2025, while detained in pretrial federal custody at the Livingston County Jail, Marshall was sexually assaulted by two correctional officers. PSR ¶ 69. He was transported to a hospital emergency department the same day, where he underwent medical treatment and sexually transmitted disease screening. *Id.* This assault occurred while Marshall was in the government's custody, pending trial and sentencing in this matter. The Court may consider the circumstances and events of pretrial confinement in determining the appropriate sentence under § 3553(a)(1). The experience compounds a childhood history of sexual abuse that was never treated and adds a layer of victimization for which Marshall bears no responsibility.

## E. Substance Use as Self-Medication

Marshall began using alcohol and unprescribed opioid painkillers at approximately age fifteen. PSR ¶ 71. By the time of his arrest, he was consuming up to 90 milligrams of opioid painkillers daily. *Id.* He identified marijuana as his substance of choice and smoked approximately one ounce daily. PSR ¶ 72. He has acknowledged that his substance use was an attempt to manage untreated psychiatric symptoms, a characterization consistent with the documented trajectory of

his illness and his mother's independent account. PSR ¶¶ 62, 64. He has never received substance use treatment but has expressed willingness to do so. PSR ¶ 74. That willingness, paired with the mental health treatment conditions recommended in the supervised release conditions, provides a realistic pathway to the rehabilitation that incarceration alone cannot provide.

### III. § 3553(A) SUPPORTS A SENTENCE OF 27 MONTHS.

### A. Nature and Circumstances of the Offense

The offense of conviction is bank robbery by intimidation under 18 U.S.C. § 2113(a). That statute covers a broad spectrum of conduct, from armed takeovers involving firearms, multiple victims, and serious physical harm, to a single demand note with no weapon and no contact. Marshall's offense sits at the least serious end of that spectrum. He entered Fifth Third Bank, approached a teller, placed a handwritten note on a napkin on the counter, and received $776 in currency. PSR ¶¶ 7-9. He neither displayed nor possessed any weapon. He made no explicit verbal threat. He used no physical force. He did not restrain anyone or prevent any person from leaving. The note said, "no one gets hurt." When he left, every person in the bank was unharmed. The entirety of the funds was recovered within hours, at the time of his arrest. PSR ¶¶ 9-10.

The victims in this case were not harmed, either physically or financially. Fifth Third Bank suffered no net loss. PSR ¶ 83. These facts do not excuse the offense. They contextualize it. Bank robbery by intimidation carries a maximum of twenty years precisely because the category includes conduct far more dangerous than what occurred here. A sentence of more than 27 months for Marshall, whose offense caused no injury and no financial loss, would be indistinguishable in length from sentences imposed in materially more serious cases within the same statutory category. That would be greater than necessary under § 3553(a).

## B. The Need for the Sentence Imposed

As of the currently scheduled sentencing date, Marshall will have served more than 27 months in federal custody. That is a substantial period of punishment for a 24-year-old with no felony convictions.

Under the defense's guideline calculation, a sentence of time served is a within-guidelines sentence, not a departure, not a variance, but the sentence the guidelines themselves produce when applied as argued herein. A sentence of 27 months reflects the seriousness of the offense, provides just punishment, and accomplishes general deterrence without imposing a term that exceeds what is necessary for this defendant on these facts.

Specific deterrence is most effectively achieved by addressing the conditions that produced the offense: untreated mental illness, unaddressed trauma, and opioid dependency. The conditions driving Marshall's offense are not addressed by further incarceration. They are better addressed by the Probation Department while Marshall is on supervised release. § 3553(a)(2)(D) directs the court to provide the defendant with needed medical care or other correctional treatment "in the most effective manner." For a 24-year-old with Marshall's documented psychiatric profile (severe depression, PTSD, psychosis, opioid and cannabis dependency, and a history of trauma beginning in early childhood) the most effective manner is community-based treatment, not prison. The record demonstrates as much. Upon transfer to the MCC, Marshall's psychiatric medications were discontinued and his requests for mental health services went unanswered. PSR ¶ 70. The incarceration has not treated his conditions. There is no reason to believe additional months of incarceration will do what 27 months could not.

A three-year supervised release term with mandatory mental health and substance abuse treatment, which the Probation Office recommends and can facilitate, provides the structure that will actually reduce Marshall's risk of reoffending.

A sentence of 27 Months followed by three years of supervised release accomplishes rehabilitation, deterrence, and public protection without adding months that serve no additional statutory purpose.

## C. Avoiding Unwarranted Sentencing Disparities

Using Marshall's guidelines calculation, the JSIN database (https://jsin.ussc.gov) provides the following information.

> During the last five fiscal years (FY2021-2025), there were 11 defendants whose primary guideline was §2B3.1, with a Final Offense Level of 18 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 10 defendants (91%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 21 month(s) and the median length of imprisonment imposed was 27 month(s).

This data demonstrates that for someone in Marshall's situation, a sentence of 27 months is the appropriate sentence. That sentence falls within the median length of sentence for similarly situated defendants. That sentence is justified by the absence of aggravating factors here: no weapon, no injury, no financial loss, and a degree of mental health issues not reflected in the guideline calculation.

## D. Pending Consequences Beyond This Proceeding

Marshall faces active detainers and pending charges in Indiana, Wisconsin, Colorado, and Ohio, as well as an active warrant in DuPage County, Illinois for aggravated robbery charges that

were not resolved by this federal prosecution. PSR ¶¶ 34-38. This Court's sentence is not the totality of the consequences Marshall faces for his conduct. That reality weighs against adding months beyond what is necessary to achieve the federal sentencing objectives in this case.

## IV. CONDITIONS OF SUPERVISED RELEASE

### A. Mandatory Conditions

Marshall has no objections to the mandatory conditions of supervised release.

### B. Discretionary Conditions

Marshall objects to Condition No. 4.  Marshall requests that the Court modify Condition No. 4 to excuse compliance with the full-time employment requirement during any period in which he is enrolled in inpatient or intensive outpatient mental health or substance abuse treatment

Marshall objects to Condition No. 16. Specifically, Marshall objects that if he is employed, a probation officer should not be permitted to visit at work. Visits at work can cause more than embarrassment to Marshall among his co-workers, they can potentially result in loss of employment should an employer not wish to permit visits from a federal officer. The Probation Office can sufficiently monitor Marshall's employment through other verification methods without visiting him at work.

### C. Special Conditions

Marshall has no objections to the proposed special conditions of supervised release.

# V. CONCLUSION

A sentence of 27 Months followed by three years of supervised release is sufficient but not greater than necessary to satisfy § 3553(a) in this case. Marshall is a 24-year-old first-time offender whose commission of a non-violent, unarmed bank robbery arose from a life shaped by untreated mental illness, childhood sexual abuse, domestic violence, homelessness, and substance dependency. Marshall has already been sufficiently punished. The conditions of supervised release and the resources available to Marshall while on supervised release are the most likely avenue to lead Marshall to a law-abiding life. Additional time spent in custody will do nothing to further the purposes of sentencing.

Marshall respectfully asks the Court to impose a sentence of 27 months followed by three years of supervised release.

Respectfully submitted,

_____
Attorney for Solomon Marshall

CERTIFICATE OF SERVICE

I, Joshua B. Kutnick, an attorney, certify that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), I electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of the United States District Court for the Northern District of Illinois using the ECF system, which will send notification of such filing to all counsel of record.

_____

**JOSHUA B. KUTNICK**            Joshua B. Kutnick
**900 W. Jackson Blvd., Suite 7E**   Attorney at Law
**Chicago, Illinois 60607**
**312-441-0211**
**Joshua@kutnicklaw.com**