UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

SOLOMON MARSHALL

No. 24 CR 135

Honorable John Robert Blakey

**GOVERNMENT'S SENTENCING MEMORANDUM**

On March 12, 2024, defendant Solomon Marshall walked into the Fifth Third Bank located at 1 South Wacker Drive in Chicago, Illinois, and robbed it for $776. Marshall did so via a demand note telling the victim teller: "Put your hands on your chest, walk over and have[sic] fill the bag with money. You have three minutes. No one gets hurt." The seriousness of Marshall's conduct, along with the necessity to promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public from further crimes of the defendant, warrant a term of imprisonment of 41 months, the bottom of the Guidelines range.

## I.      Background

On March 12, 2024, Marshall was arrested for bank robbery by intimidation and charged by complaint the following day. Dkt. 1. On April 8, 2024, Marshall was charged in a one-count indictment with bank robbery by intimidation, in violation of Title 18, United States Code, Section 2113(a). Dkt. 12. On October 30, 2025, after a jury trial, the jury found Marshall guilty of bank robbery by intimidation. Dkt. 58. Marshall is currently scheduled to be sentenced by the Honorable John Robert Blakey on June 18, 2026, at 1:00 p.m. Dkt. 70.

## II.    The Offense of Conviction

On March 12, 2024, Marshall entered the Fifth Third Bank wearing a gray hoodie, a knitted cap under the hood, a black ski mask, black pants, and white gym shoes. PSR ¶ 7. Marshall approached a bank teller, Mr. Farber, and asked if there were any smaller branches nearby. *Id.* Mr. Farber found this suspicious and warned nearby bank branches of a potential robbery. *Id.*

Approximately one hour later, at approximately 9:41 a.m., Marshall came back to the Fifth Third Bank, this time wearing black and red gloves and carrying a brown paper Potbelly's bag. PSR ¶ 8. Marshall first approached another employee, Ms. Head, who was at a different teller station. GVO at 2. Marshall put a demand note written on a brown napkin on Ms. Head's counter. *Id.* Mr. Farber was suspicious of what Marshall was doing and went to intervene. *Id.* Marshall then gave Mr. Farber the demand note, which read: "Put your hands on your chest, walk over and have[sic] fill the bag with money. You have three minutes. No one gets hurt." PSR ¶ 8. Mr. Farber interpreted this note as a threat. *Id.*

Mr. Farber complied with the note. Mr. Farber walked Marshall to his teller station and tried to get money from his TCR machine via the "robbery" setting, but the machine was not working. GVO at 2. Marshall told Mr. Farber something to the effect of "come on man." GVO at 2. Mr. Farber then went into his teller drawer where he kept mutilated bills and other bills that would not go into the TCR machine. *Id.* Those stacks of bills were banded with the day's date and Mr. Farber's initials. *Id.*

Mr. Farber then put the money in the Potbelly's bag, gave it to Marshall, and Marshall exited the bank and ran down the street. PSR ¶ 8.

Marshall then ran through a nearby alley where he removed his mask, gloves, hat, and jacket and shoved them into the Potbelly's bag with the stolen money. PSR ¶ 9. Chicago Police Department ("CPD") officers were able to use Chicago Transit Authority ("CTA") cameras to locate and track Marshall as he traveled via CTA trains. *Id.* CPD was ultimately able to locate Marshall's real time location via the CTA cameras and apprehended him at the Illinois Medical District blue line stop. *Id.* At the time of his arrest, Marshall was holding the Potbelly's bag containing the money and clothing from the bank robbery. *Id.*

## III.    Sentencing Guidelines Calculations

The government agrees with the criminal history and offense level calculations, the applicable Guidelines range of 41 to 51 months imprisonment, as set forth by the United States Probation Office in the PSR. PSR ¶¶ 15-23, 25-32, 85.

## IV.    Application of the Statutory Sentencing Factors

Criminal sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In determining a sentence to impose, courts considers the statutory factors listed in § 3553(a)(1)-(7), including: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense

3

and respect for the law, to promote just punishment, and to afford adequate deterrence from future criminal conduct. *See* 18 U.S.C. § 3553(a); *see also United States v. Vallar*, 635 F.3d 271, 278 (7th Cir. 2011). Here, the factors support the government's request for a term of imprisonment at the bottom of the Guidelines range.

**A.     The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant**

Marshall's offense is serious. Committing a bank robbery under the threat of violence is a dangerous crime that puts the lives of employees, customers, and other innocent bystanders at risk. It is an experience that often leaves lasting trauma with the victims. Though Marshall did not brandish, possess, or say he possessed a weapon, or use ***explicit*** threats of injury or bodily harm, Marshall did use implicit threats, such as "You have three minutes. No one gets hurt." The victim teller confirmed that he took the note as a threat and complied.

While Marshall's criminal history does not contain many convictions, his arrest pattern shows a slew of arrests and pending charges over the past six years that have escalated in severity and the danger that they pose to the community, including a pending aggravated robbery charge from 2023. The PSR also indicates that Marshall has been cited several times for infractions while in custody for the current case. This warrants a sentence of imprisonment within the Guidelines range.

The government recognizes that Marshall has had reported issues with mental health and substance abuse. The government also recognizes that Marshall has had a strained relationship with family members and a purported history of sexual abuse.

4

For these reasons, a sentence of 41 months, the bottom of the Guidelines range, is sufficient, but not greater than necessary, to account for the nature and circumstances of the current offense as well as Marshall's history.

**B.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, and Protect the Public from Further Crimes of the Defendant**

As mentioned above, bank robbery by intimidation is a dangerous crime that puts the lives of employees, customers, and other innocent bystanders at risk, and leaves lasting trauma. It requires equally serious punishment. Moreover, to date, Marshall has failed to take responsibility for his actions or express any remorse.

Aside from the seriousness of Marshall's crime, a sentence within the Guidelines range is necessary to promote respect for the law and protect the public from further crimes. As mentioned, Marshall's history shows several pending charges in the past 6 years for which Marshall has failed to appear. These charges include armed robbery. And even while being held in federal custody for the current case, Marshall has had 18 infractions for incidents including assault, fighting, making sexual threats, and spitting in the face of an office.

A sentence at the bottom of the Guidelines range, is sufficient, but not greater than necessary, to reflect the seriousness of Marshall's actions, promote respect for the law, and provide just punishment for the dangerous bank robbery that Marshall committed.

**C.    The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

This Court's sentence should deter copycat behavior. It is important for individuals who know Marshall, are familiar with this case, or who may become familiar with this case after the Court imposes its sentence, to be deterred from robbing banks and understand that they will subject themselves to a lengthy term of imprisonment if they do what Marshall did. A sentence of 41 months' imprisonment is sufficient, but not greater than necessary, to deter would-be bank robbers from emulating Marshall's conduct.

**D.    A Below-Guidelines Sentence Would be Insufficient and Inappropriate in this Case**

Two factors considered under § 3553(a) are the advisory range set by the Sentencing Guidelines, and the Commission's policy statements. *See* § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 522 U.S. 38, 128 S. Ct. 586, 596 (2007). For two reasons, this Court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S.

6

220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious weight to the Guidelines.

Second, the Guidelines deserve meaningful consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-Booker. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system. See 28 U.S.C.

7

§ 994(o). These ongoing efforts to refine the Guidelines are another reason seriously to consider the advisory range.

Here, careful consideration of the § 3553(a) factors, as detailed above, justifies a sentence at the bottom of the Guidelines range.

## V. Restitution

Restitution in the amount of $776 is mandatory in this case. Because the entire $776 was recovered at the time of arrest, and has been returned to the bank, there is no outstanding balance.

## VI. Supervised Release Conditions

The government agrees with all the conditions of supervised release proposed by U.S. Probation.

## VII. Conclusion

For the reasons stated above, the government respectfully requests that the Court sentence Marshall to 41 months' imprisonment.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Wesley A. Morrissette*
WESLEY A. MORRISSETTE
Assistant United States Attorney
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

8

## CERTIFICATE OF SERVICE

I, Wesley A. Morrissette, an attorney, certify that I served a copy of the foregoing Government's Sentencing Memorandum by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     */s/ Wesley A. Morrissette*
WESLEY A. MORRISSETTE
Assistant United States Attorney
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

9